## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## LITTLE ROCK DIVISION

DIANNA J. VALLEY                                                    PLAINTIFF

V.                              NO. 4:10CV01393 JTR

MICHAEL J. ASTRUE,
Commissioner, Social Security Administration                  DEFENDANT

## MEMORANDUM OPINION AND ORDER

### I. Introduction

Plaintiff, Dianna J. Valley, has appealed the final decision of the Commissioner of the Social Security Administration denying her claim for Supplemental Security Income (SSI).  Both parties have submitted Appeal Briefs (docket entries #10, #11), and the issues are now joined and ready for disposition.

The Commissioner's denial of benefits must be upheld upon judicial review if the decision is supported by substantial evidence in the record as a whole.  *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Moore*, 623 F.3d at 602.  In its review, the Court should consider evidence supporting the Commissioner's decision as well as evidence fairly detracting from it.  *Id.*  Nevertheless, if it is possible to draw two inconsistent conclusions from the evidence and one of these conclusions

represents the Commissioner's findings, the denial of benefits must be affirmed. *Id.*

On October 23, 2007, Plaintiff filed her SSI application. (Tr. 129-31.) She reported that she had been unable to work since October 1, 2000, due to scoliosis, migraines, seizures, and adult attention deficit disorder. (Tr. 152.) She was forty-six years old at the time of her application, had completed high school, and had past work as a certified nurse's assistant. (Tr. 147, 153, 155.)

After Plaintiff's claims were denied at the initial and reconsideration levels, she requested a hearing before an Administrative Law Judge (ALJ). On October 21, 2009, the ALJ conducted a hearing at which Plaintiff and a vocational expert testified. (Tr. 6-34.)

The ALJ considered Plaintiff's impairments by way of the familiar five-step sequential evaluation process. Step 1 involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i) & (b). If the claimant is, benefits are denied, regardless of medical condition, age, education, or work experience. *Id.*

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has a "severe" impairment, *i.e.*, an impairment or combination of impairments which significantly limits the claimant's ability to perform basic work activities. *Id.* § 416.920(a)(4)(ii) & (c). If not, benefits are denied. *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment, which is presumed to be disabling. *Id.* § 416.920(a)(4)(iii) & (d). If so, and the duration requirement is met, benefits are awarded. *Id.*

Step 4 involves a determination of whether the claimant has a sufficient residual functional capacity (RFC), despite the impairment(s), to perform the physical and mental demands of past relevant work. *Id.* § 416.920(a)(4)(iv) & (f). If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given the claimant's RFC, age, education and work experience. *Id.* § 416.920(a)(4)(v) & (g). If so, benefits are denied; if not, benefits are awarded. *Id.*

In his January 15, 2010 decision (Tr. 42-49), the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since October 23, 2007, her application date;[1] (2) had "severe" impairments of scoliosis, migraines, and mood disorder; (3) did not have an impairment or combination of impairments that met or equaled a listed

---

[1]SSI benefits are not payable for any period prior to the date a claimant files an SSI application. 20 C.F.R. § 416.335. Therefore, the relevant time period in SSI cases starts with the date the SSI application is filed. *Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989).

impairment; (4) had the RFC for a limited range of sedentary work,[2] *i.e.*, the ability to lift and carry ten pounds occasionally and less then ten pounds frequently; to sit for about six hours during an eight-hour workday; to stand and walk for two hours during an eight-hour workday; to occasionally climb, balance, stoop, kneel, crouch, crawl and reach overhead; to frequently handle and finger; to understand, remember and carry out simple, routine and repetitive tasks; and to respond appropriately to supervisors, co-workers, the general public, and usual work situations; (5) was not fully credible regarding the intensity, persistence and limiting effects of her symptoms; (6) was unable to perform her past relevant work; but (7) considering her age, education, work experience and RFC, and based on the testimony of the vocational expert, was able to perform other jobs that exist in significant numbers in the national economy.  Thus, the ALJ concluded that Plaintiff was not disabled.

The Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making it the final decision of the Commissioner.  (Tr. 1-5.) Plaintiff then appealed the denial of benefits to this Court (docket entry #2).

## II.  Analysis

---

[2]*See* 20 C.F.R. § 416.967(a) (sedentary work requirements).

Plaintiff argues that the ALJ erred: (1) in finding that her left knee problem was not a "severe" impairment; (2) in assessing the credibility of her subjective complaints; (3) in discounting the opinions of two physicians in formulating an RFC assessment; and (4) in evaluating her migraines.  For the reasons discussed below, the Court concludes that Plaintiff's arguments are without merit.

A.    Severity of Left Knee Impairment.

At step two of the sequential evaluation, the ALJ acknowledged Plaintiff's recent complaint of left knee pain and the post-hearing medical evidence of degenerative joint disease.[3]  However, the ALJ concluded that the condition was "non-severe," as it caused no more "than a minimal limitation in the claimant's ability to perform basic work activities."  (Tr. 44.)  *See* 20 C.F.R. § 416.921(a) (impairment is not severe if it "does not significantly limit [the claimant's] physical or mental ability to do basic work activities").

Plaintiff argues that substantial evidence does not support the ALJ's decision

_____

[3]Plaintiff complained of knee pain at a doctor's appointment on October 15, 2009. (Tr. 300.)  On October 29, 2009, an MRI revealed a "non-displaced fracture involving the posterior tibial plateau underlying the PCL insertion with adjacent edema," "thickening of the ACL," a "degenerative signal within the posterior horn of the medial meniscus," "focal full thickness cartilage loss," and "medial and lateral compartment osteophytosis." (Tr. 302-04.)   On November 13, 2009, Russell B. Allison, M.D., an orthopedist, examined her knee, reviewed x-rays and the MRI, and diagnosed left knee degenerative joint disease. (Tr. 311.)

that her left knee impairment was non-severe.  This argument does not merit reversal because the ALJ did not terminate his analysis at step two, instead proceeding through the sequential evaluation and stating that he was considering "all of the claimant's impairments, including impairments **that are not severe**," in formulating Plaintiff's RFC.  (Tr. 43 [emphasis added].)  *See Swartz v. Barnhart*, 188 F. App'x 361, 368 (6th Cir. 2006) (where ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, any error in failing to identify particular impairment as "severe" at step two is harmless); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *see also* 20 C.F.R. § 416.945(a)(2) (in assessing RFC, ALJ must consider "all of [a claimant's] medically determinable impairments ..., including ... impairments that are not 'severe'"), § 416.923 (ALJ must "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity").

Moreover, the ALJ adequately accounted for limitations from Plaintiff's knee impairment in his RFC assessment for sedentary work, finding that she was capable of two hours of standing or walking and was limited to occasional climbing, stooping, kneeling, crouching and crawling.  (Tr. 46.)  The record as a whole does not support the need for further limitation.  Plaintiff did not allege a knee impairment or pain in

her disability application and the first medical documentation of any such complaints was at a doctor's appointment about one week before her administrative hearing. (Tr. 300.) At the hearing on October 21, 2009, Plaintiff testified that her left knee pain limited her ability to stand but that there were no household chores that she was incapable of doing. (Tr. 20, 24.) She reported to an orthopedist on November 13, 2009, that she was "still able to do most of her needed activities," albeit with some limitations due to her left knee pain. Although they "talked about [knee] replacement," Plaintiff told the orthopedist she was "not ready for that yet." The orthopedist told her that, if her knee was painful, she could come in for an injection at any time. (Tr. 311.)

Thus, the ALJ's finding that Plaintiff's left knee problem was not a "severe" impairment does not constitute reversible error.

B.     Credibility Determination.

An ALJ may discount a claimant's subjective allegations if they are inconsistent with the record as a whole. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ's credibility determination normally will be granted deference if he explicitly discredits a claimant's testimony and gives good reasons for doing so. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). *See* 20 C.F.R. § 416.929(c) (listing factors

to consider);[4] *Polaski*, 739 F.2d at 1322; SSR 96-7p, 1996 WL 374186 (July 2, 1996) (guidelines for assessing credibility of claimant's statements regarding symptoms).

Here, the ALJ stated that he had considered Plaintiff's subjective allegations of pain and other symptoms in light of "the entire case record," including the objective medical evidence, and in accordance with § 416.929 and SSR 96-7p. (Tr. 46.) He expressly found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not fully credible" to the extent they were inconsistent with his RFC assessment. (Tr. 46, 48.)

Plaintiff argues that the ALJ's credibility determination is inadequate because: (1) he appeared to base his decision only on alleged inconsistencies in her disability onset date; (2) he placed undue weight on the fact that she was a mother of five, implying that her housewife responsibilities were her primary reason for not working; and (3) he failed to consider "the other *Polaski* credibility factors."

When Plaintiff filed for disability for October 23, 2007, she alleged in her application that her disability onset date was October 1, 2000. (Tr. 129.) In an

---

[4]As stated in this regulation, the ALJ is required to consider, in addition to the objective medical evidence and the claimant's prior work record, statements and observations made by the claimant, his or her medical providers and any others regarding (1) the claimant's daily activities, (2) the location, duration, frequency and intensity of pain or other symptoms, (3) precipitating and aggravating factors, (4) type, dosage, effectiveness and side effects of medications, (5) non-medication treatments or other measures taken to alleviate pain and symptoms, and (6) functional limitations.

undated disability report submitted during the administrative process, she claimed that she "bec[a]me unable to work" on October 1, 2000, due to her illnesses and conditions but "stop[ped] working" on June 1, 2005, because she "was having problems with [her] children's health." (Tr. 152.)  At the administrative hearing, she amended her disability onset to correspond to her application date, October 23, 2007.  (Tr. 8.) Plaintiff testified that she decided to file for disability at that time because she had been thinking about trying to get a job but felt she could not do so because she was not getting enough sleep.  (Tr. 15-16.)  An examining psychologist noted Plaintiff's report of numerous short-term jobs over the years and stated that she "tends to become obsessive-compulsive and winds up quitting jobs."  (Tr. 211, 215.)

The ALJ noted these inconsistent responses and properly cited them as a basis for discounting Plaintiff's credibility.  (Tr. 45, 46-47.)  *See Boettcher v. Astrue*, 652 F.3d 860, 864 (8th Cir. 2011) (conflicting statements about reasons for stopping work are valid reasons supporting adverse credibility determination).  "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record," including statements made by the claimant at each prior step of the administrative review process.  SSR 96-7p, *supra* at *5.

Furthermore, the ALJ properly found that the record "more supported"

Plaintiff's statement that she quit work because of problems with caring for her children, and he properly gave weight to this in his credibility analysis.  (Tr. 47.) Whether a claimant leaves work for reasons unrelated to his allegedly disabling medical condition is a relevant factor in a credibility analysis.  *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008); *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005). The record confirms that the three children who still live with Plaintiff have attention deficit disorder and require an increased level of attention and supervision.  (Tr. 12-13, 279, 281, 284-85, 291.)  Her family physician wrote on September 18, 2009, that Plaintiff had a "huge responsibility" in caring for her children, keeping them appropriately monitored, administering their medications as prescribed, and "being the only one to help them in life with education and daily life skills."  (Tr. 291.)

Additionally, Plaintiff's ability to care for her children and manage her household weighs against her subjective claims of disabling impairments.  She reported daily activities of housework, errands, meal preparation, caring for her children and herself, as well as laundry, yard work, driving, shopping "pretty often," and attending weekly church activities.  (Tr. 161-65, 215.)  She testified at the administrative hearing that, although she had some difficulty, there were no household chores that she was incapable of doing.  (Tr. 24-25.)  *See Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (subjective complaints of disabling physical and mental

limitations were inconsistent with claimant's daily activities as primary caregiver for two special-needs children and doing household chores); *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (no error in discounting credibility where self-reported limitations were inconsistent with medical evidence and daily activities, including housework, caring for child, cooking and driving); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005) (claimant's total disability allegation was inconsistent with her daily living activities, including the care of her special needs children, bill paying, laundry, and cooking).

Finally, although the Eighth Circuit's preferred practice is for the ALJ to cite *Polaski*, he is not required to do so, nor is he required to explicitly discuss each *Polaski* factor.  *Buckner v. Astrue*, 646 F.3d 549, 558-59 (8th Cir. 2011); *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (ALJ "adequately, if not expressly," applied *Polaski* factors where he cited and conducted credibility analysis pursuant to § 416.929, which "largely mirror[s] the *Polaski* factors").  Here, the ALJ expressly noted that he had considered all alleged symptoms in accordance with the requirements of § 416.929 and SSR 96-7p and in light of the entire case record.  (Tr. 46.)  His credibility discussion specifically addressed her inconsistent statements regarding the date her disability began, her varying reasons for not working, and her significant daily responsibilities.  (Tr. 47.)  Other parts of his decision addressed the

objective medical evidence regarding her impairments (Tr. 46-48), her medication use (Tr. 44, 47), her allegations of pain and functional limitations (Tr. 44, 45, 46-48), the opinions of her examining and treating physicians (Tr. 47-48), and her history of quitting jobs  and her past work as a certified nurse's assistant (Tr. 45, 48).

Thus, the ALJ's credibility analysis substantively and adequately covered the relevant considerations, and he provided good reasons supported by substantial evidence for not fully accepting Plaintiff's subjective complaints.  While there is evidence in the record both supporting and detracting from the ALJ's conclusion that Plaintiff was not credible, the ALJ was able to observe Plaintiff during her testimony at the hearing and this, in addition to the medical and other evidence in the record, convinced the ALJ that she was not fully credible.  Because the ALJ was in the best position to make a credibility determination, the Court will defer to that determination. *See Steed*, 524 F.3d at 876.

C.    <u>Physical RFC Determination</u>.[5]

Plaintiff asserts that, in making his physical RFC assessment, the ALJ failed to afford adequate weight to the opinions of a consultative examiner, Carl Johnson, M.D., and her treating family physician, Clifford L. Evans, M.D.

In deciding whether a claimant is disabled, the ALJ is required to consider

---

[5]Plaintiff does not challenge the ALJ's mental RFC determination.

every medical opinion received from physicians and other medical sources; he must resolve conflicts among the various opinions; and he may reject any conclusions that are inconsistent with the record as a whole.  20 C.F.R. § 416.927(d); *Heino*, 578 F.3d at 879.  Furthermore, the ALJ must assess a claimant's RFC based on "all of the relevant medical and other evidence," including opinions from any medical sources. 20 C.F.R. §§ 416.927(e)(2), 416.945(a)(3).

Here, the ALJ expressly stated that he had considered all opinion evidence in accordance with the requirements of § 416.927 and the relevant rulings.[6]  He noted that Plaintiff had been evaluated "on a number of occasions, either in person, based on the medical evidence, or both," referencing the records of Dr. Johnson, Dr. Evans, and others.  (Tr. 46.)

Plaintiff first argues that the ALJ committed reversible error by giving "little weight" to the opinion of Dr. Johnson, who performed a one-time, general physical examination on November 14, 2007.  (Tr. 218-24.)  Dr. Johnson noted Plaintiff's reports of migraine headaches, scoliosis[7] with pain and stiffness in the right shoulder

---

[6]SSR 96-2p, 1996 WL 374188 (July 2, 1996) (treating source medical opinions); SSR 96-5p, 1996 WL 374183 (July 2, 1996) (medical opinions on issues reserved to the Commissioner); SSR 96-6p, 1996 WL 374180 (July 2, 1996) (state agency medical opinions); SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006) (evidence from sources who are not "acceptable medical sources").

[7]The evidence shows that Plaintiff was born with scoliosis and had a Harrington rod inserted at age 13.  (Tr. 16, 206, 218, 282.)

and neck, and paresthesia in the right upper extremity. (Tr. 218, 220.) On examination, he observed that her right shoulder was higher than the left, her neck was "very short" on the right, her right chest wall was concave, her posture was abnormal, and her range of motion was limited in the cervical spine. (Tr. 220-22.) He further observed that she had normal range of motion in the lumbar spine and all extremities, had no reflex or sensory abnormalities, had no muscle weakness, and had "adequate gait and coordination" and "excellent" limb function. (Tr. 221-22.) He expressed the opinion that she "can't sit [or] stand for long periods of time," but did not cite any specific findings to support his conclusion. (Tr. 224.)

The ALJ noted that, while it was not "entirely clear" what Dr. Johnson meant by "long periods of time," his opinion was nevertheless inconsistent with Plaintiff's disability report – about one week earlier – that she "probably could walk one mile before needing to rest" and could engage in other activities. (Tr. 47, 166.) As stated, her reported activities included daily household chores, childcare and personal care, in addition to yard work, driving, shopping and church activities. (Tr. 161-65.) In the same report, Plaintiff was asked to identify the areas of functioning that were affected by her conditions. She checked "standing" and added the notation "for long periods of time," but did not identify "walking" or "sitting" as affected areas. (Tr. 166.)

The ALJ is entitled to discount the opinion, in whole or in part, of a one-time

examining medical source, particularly when it is inconsistent with other evidence in the record.  *See Vandenboom v. Barnhart*, 421 F.3d 745, 749-50 (8th Cir. 2005); *Hilkemeyer v. Barnhart*, 380 F.3d 441, 446 (8th Cir. 2004); 20 C.F.R. § 416.927(d)(2) (factors to evaluate in determining weight given to medical opinions, including "frequency of examination" and "consistency").  Dr. Johnson's conclusion regarding Plaintiff's restricted ability to sit or stand was inconsistent with other evidence in the record.  Thus, it was not improper for the ALJ to afford limited weight to his opinion.

Plaintiff also argues that the ALJ erred in discrediting the opinions of Dr. Evans, her family physician, solely on the basis of a letter he wrote in September 2009 expressing sympathy for her responsibilities in taking care of her children, without considering other factors identified by § 416.927 for evaluating medical opinions. The ALJ can properly discount a treating physician's opinion if it is inconsistent with the physician's own clinical treatment notes, or is inconsistent with and unsupported by the medical evidence as a whole.  *Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010).  The record shows that the ALJ did not err in evaluating Dr. Evans' opinions and that the ALJ had multiple reasons for discounting those opinions.

The ALJ specifically noted three of Dr. Evans' opinions.  (Tr. 47.)  First, on July 31, 2007, Dr. Evans wrote a "To Whom it May Concern" letter in which he stated that Plaintiff was "neither physically or mentally capable to function in a normal work

environment." (Tr. 209.)  Second, on September 18, 2009, Dr. Evans wrote a letter in which he noted Plaintiff's "huge responsibility" and increased physical and mental stress from taking care of her five children, three of whom had attention deficit disorder.  As discussed earlier, Dr. Evans' letter stated that Plaintiff was responsible for appropriately monitoring her children and administering their medication, and was the only person who helped them with their education and daily life skills. (Tr. 291.) Third, on October 8, 2009, Dr. Evans completed a Medical Source Statement (MSS) in which he assessed significant limitations in Plaintiff's physical capabilities, including her inability to: stand and/or walk for more than one hour in a day;  sit more than one hour in a day; and perform handling/fingering more than two hours in the day.  (Tr. 295-98.)

There are a number of inconsistencies associated with Dr. Evans' MSS.  First, he found that Plaintiff had extreme, disabling limitations in her ability to sit, walk and stand.  This finding is inconsistent with his earlier letter stating that Plaintiff was fully responsible for caring for the considerable needs of her five children.  It is also inconsistent with Plaintiff's own statements, discussed above, that she thought she could walk a mile, regularly engaged in various activities, and was capable of performing all household chores.  Dr. Evans' finding of severe restrictions on handling/fingering also is inconsistent with Plaintiff's reported activities and with Dr.

Johnson's objective observations that Plaintiff had "excellent" limb function, including the ability to hold a pen and write, touch fingertips to palm, grip, oppose thumb to fingers and pick up a coin, as well as unrestricted range of motion in her hands and arms.  (Tr. 221-22.)  Thus, the record supports the ALJ's decision to afford limited weight to Dr. Evans' opinion.

Furthermore, the ALJ's decision makes it clear that he did not ignore the opinions of Dr. Johnson or Dr. Evans and, in fact, incorporated many of their specific findings into his RFC determination by limiting Plaintiff to sedentary work.  After discussing the physicians' opinions regarding Plaintiff's scoliosis and related limitations, he stated: "[I]t is clear the claimant will face limitations due to this impairment and these have been addressed in the [RFC]."  (Tr. 47.)

D.    Evaluation of Migraines.

Plaintiff asserts that the ALJ's analysis of her migraine headaches is insufficient because, even though she was doing better on medications, she still experienced headaches three to four times per month lasting a few hours, and this was not accounted for in the ALJ's RFC determination, which did not allow for unscheduled breaks.

The ALJ expressly found that Plaintiff's migraine headaches constituted a "severe" impairment (Tr. 44), and he discussed the relevant medical evidence (Tr. 47).

-17-

He stated that the medical evidence showed Plaintiff had experienced problems with headaches since at least 2004, referencing treatment notes from December 2004 and January 2005.  (Tr. 282-83.)  He cited records from September 2009 indicating that, for the previous three to four months, Plaintiff had been having two to three migraines per week.  (Tr. 292.)  By the time of the administrative hearing, one month later, Plaintiff testified that the new medication she was taking had helped and that she was now having about three to four headaches a month, generally lasting a couple of hours.  (Tr. 21-22.)  The ALJ noted that this was "in stark contrast" to her previous complaints and showed that she was "doing much better" on the new medication.  He nevertheless stated that he had considered her headaches in formulating his RFC assessment.  (Tr. 47.)

This record constitutes substantial evidence to support the ALJ's decision not to impose further limitations due to Plaintiff's migraine headaches or to find her disabled on that basis.   A condition that can be controlled with treatment or medication cannot be considered disabling. *Martise v. Astrue*, 641 F.3d 909, 924 (8th Cir. 2011) ("Because [claimant's] migraine headaches are controllable and amenable to treatment, they do not support a finding of disability."); *Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998) (same).

### III. Conclusion

After a careful review of the entire record and all arguments presented, the Court finds that Plaintiff's arguments for reversal are without merit and that the record as a whole contains substantial evidence upon which the ALJ could rely in reaching his decision.  The Court further concludes that the ALJ's decision is not based on legal error.

IT IS THEREFORE ORDERED THAT the final decision of the Commissioner is affirmed and Plaintiff's Complaint is DISMISSED, WITH PREJUDICE.

DATED THIS 29th  DAY OF November, 2011.


_____
UNITED STATES MAGISTRATE JUDGE